# 2002 DTA 119

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL VII DE CAROLINA Y FAJARDO**

DEPARTAMENTO DE LA FAMILIA
Recurrido

v.

MILAGROS RIVERA SOLERO
Recurrida

TELEMUNDO DE PUERTO RICO, INC.
Peticionaria

Núm. KLCE-02-00663

---

DEPARTAMENTO DE LA FAMILIA
Recurrida

v.

MILAGROS RIVERA SOLERO
Recurrida

PEDRO ZERVIGON
Peticionario

Núm. KLCE-02-00664

■■■■■■■■■■■■■■■■■■■■

San Juan, Puerto Rico, a 11 de julio de 2002

Panel integrado por su Presidente, el Juez Martínez Torres,
el Juez Córdova Arone y la Juez Hernández Torres

Martínez Torres, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Los peticionarios Telemundo de Puerto Rico, Inc., y Pedro Zervigón, comparecen ante nos mediante solicitudes de *certiorari* separadas. Solicitan que revisemos una orden dictada el 14 de junio de 2002 por el Tribunal de Primera Instancia, Sala de Fajardo (Hon. José Alberto Ramos Aponte, Juez). La referida orden tuvo el efecto de impedir la transmisión de una entrevista realizada a la menor Y.L.P.R., hasta que la peticionaria Telemundo, y otros, cumplieran con una serie de requisitos. Además, el tribunal solicitó que en el término improrrogable de cuarenta y ocho (48) horas, se le proveyera copia no editada de la grabación de la entrevista en controversia. Por los fundamentos que expondremos a continuación, expedimos el auto de *certiorari* y dejamos sin efecto la orden de la cual se recurre.

### I

El 14 de junio de 2002, el Tribunal de Primera Instancia, Sala de Fajardo, ordenó a Pedro Zervigón, Carmen Jovet, ABC Corp. y a Telemundo de P.R. que indicaran si la menor cuya entrevista se proponen transmitir es Y.L. P.R. En caso de que así fuera, se le ordenó a los anteriormente mencionados que evidenciaran la autorización escrita del Departamento de la Familia, custodio legal de Y.L.P.R., a los fines de realizarle una entrevista a dicha menor y la posterior transmisión de la entrevista por los medios de comunicación.

El Tribunal de Primera Instancia le ordenó a Pedro Zervigón, Carmen Jovet, ABC Corp. y Telemundo que si

no contaban con la autorización antes mencionada, no transmitieran la entrevista realizada a la menor Y.L.P.R., so pena de desacato y severas sanciones. Además se les ordenó que proveyeran al tribunal dentro de un plazo de cuarenta y ocho (48) horas, una copia no editada de la grabación de las entrevistas realizadas a dicha menor, supuestamente, por parte de Carmen Jovet y Pedro Zervigón. ■

En esa misma fecha, 14 de junio de 2002, el Tribunal de Primera Instancia dictó un mandamiento dirigido a la peticionaria Telemundo para que ésta cumpliera con lo ordenado. El mandamiento se le diligenció en igual fecha a Orlando Rodríguez, Vicepresidente de Recusos Humanos de la peticionaria Telemundo.

Durante los días 17 de junio y 18 de junio de 2002, Telemundo entregó al Tribunal de Primera Instancia una copia del material crudo y una copia del material editado de la entrevista realizada a la menor, a quien en el programa se le llama "*Cristal*".

Inconforme con la orden y mandamiento expedidos, Telemundo acude ante nos mediante petición de *certiorari*. Argumenta que erró el Tribunal de Primera Instancia al dictar una orden de censura previa sin notificar del proceso ni oír a Telemundo, violentando así los más básicos principios del debido proceso de ley. En segundo lugar, Telemundo argumenta que erró el Tribunal de Primera Instancia al dictar una orden de *injunction* sin cumplir con los requisitos establecidos en nuestro ordenamiento. Por último, Telemundo alega que erró el tribunal al emitir una orden de censura previa que viola el derecho constitucional de libertad de expresión y de prensa. Argumenta además que dicha orden no procedería aun si el foro de primera instancia hubiese provisto el debido proceso de ley.

Junto con la solicitud de *certiorari*, Telemundo radicó una moción en la que solicitó trato confidencial a los videos ■ objeto de la controversia, los cuales fueron incluidos como parte del apéndice del recurso ante nuestra consideración. En esa misma fecha, Telemundo radicó una moción urgente en la que solicitó la expedición del auto de *certiorari*.

El 1 de julio de 2002, dictamos una Resolución en la que acortamos los términos reglamentarios y ordenamos a la parte recurrida, el Estado, a través de su Departamento de la Familia, que no más tarde del 8 de julio de 2002, a las 9:00 a.m., mostrara causa por la cual no debíamos conceder el remedio solicitado. También dispusimos que cualquier otra parte que deseara expresarse, lo hiciera dentro del mismo término. Por otro lado, ordenamos que en protección de la propiedad intelectual de la peticionaria Telemundo, y del mejor interés de la menor Y.L.P.R., sólo los abogados y abogadas, y las partes en este recurso, podrían examinar el contenido de los videos. También ordenamos que nadie podría reproducir de manera alguna los videos, ni divulgar ni transmitir su contenido, excepto según lo dispusiera este Tribunal.

Posteriormente, Pedro Zervigón radicó una solicitud de *certiorari* ante este foro apelativo el 1 de julio de 2002. Dicho recurso se identificó con el número KLCE-02-00664. Como dicho recurso versa sobre las misma orden cuya revisión solicita Telemundo en la solicitud de *certiorari* KLCE-02-00663, dictamos una Resolución el 3 de julio de 2002 en la que consolidamos ambos recursos. ■

Finalmente, el Departamento de la Familia, representado por el Procurador General, radicó su moción en cumplimiento de orden el 8 de julio de 2002.

Luego de estudiados los alegatos de las partes y el derecho aplicable, estamos en posición de resolver.

## II

La libertad de prensa es un derecho fundamental. *Méndez Arocho v. El Vocero*, 130 D.P.R. 867 (1992). Ese derecho emana de la Sección 4, Artículo II, de la Constitución de Puerto Rico y de la Primera Enmienda de la Constitución de los Estados Unidos de América. Su esencia estriba en impedir la restricción arbitraria del

contenido de publicaciones, así como el medio, lugar y manera en que se realicen, no importa su veracidad, popularidad o simpatía. *Pérez v. Criado Amunategui*, Opinión de 19 de junio de 2000, **2000 J.T.S. 105**.

Los derechos de libertad de expresión y de prensa protegen tanto el contenido del mensaje como el medio y el lugar donde de ejercita. *Coss v. C.E.E.*, 137 D.P.R. 877 (1995). Cónsono con lo anterior, se ha resuelto también que *"el ejercicio de la libertad de palabra y de prensa no depende de que lo que se diga o publique sea cierto y que tampoco puede coartarse dicha libertad en aras de evitar un escándalo..."*. *Aponte Martínez v. Lugo*, 100 D. P.R. 282, 288 (1971), citando a *Near v. Minnesota*, 283 U.S. 697, 721-722 (1931).

Intimamente relacionada con el derecho a la libertad de prensa, está la llamada prohibición a la censura previa (*prior restraint*). En *Alexander v. United States*, 509 U.S. 544, 550 (1993), el Tribunal Supremo federal, citando a M. Nimmer, definió la censura previa de la siguiente forma:

*"The term 'prior restraint' is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur."*

Por otro lado, el Tribunal Supremo de Puerto Rico reconoció en *Aponte Martínez v. Lugo, supra,* a la pág. 287, que el Tribunal Supremo federal *"ha rechazado y desacreditado las tentativas de censura previa, especialmente las que,... se han pretendido llevar a cabo mediante interdictos (injunctions)"*. El Tribunal Supremo citó específicamente los casos de *New York Times Co. v. United States, supra,* y *Near v. Minnesota, supra*. Véase además, David Rivé Rivera, *Recursos extraordinarios,* 1996, a la pág. 68.

Por muchos años se ha establecido con claridad que una censura previa a la expresión llega al Tribunal con una fuerte presunción de inconstitucionalidad. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963); *Pérez v. Criado Amunategui, supra*. Por ello, quien aboga por una censura previa tiene ante sí la pesada carga de justificarla. *New York Times Co. v. United States, supra.*

Por eso, las jurisdicciones estatales que han tenido ante su consideración entrevistas televisivas realizadas a menores custodiados por el Estado, no las han censurado previamente ante la mera invocación del interés de protección del menor. El Estado en esos casos sigue teniendo la pesada carga (*"heavy burden"*) de probar una justificación que amerite la censura previa. La alegación de que se busca *"el mejor bienestar del menor"*, sin más, no es suficiente justificación para ese tipo de censura. Se evita así la intervención del Estado con las decisiones editoriales de la prensa, en protección de su independencia. Además se previene que con la excusa de proteger al menor se busque la censura de un reportaje crítico de la gestión del gobierno Véase sobre el particular, *e.g., Quinn v. Johnson*, 51 A.D. 391, 381 N.Y.S. 2d 875 (1976).

Los peticionarios Telemundo y Pedro Zervigón exponen ante nos que erró el Tribunal de Primera Instancia al dictar una orden con el efecto legal de censura previa. Es norma reiterada de derecho que un tribunal no entrará a dilucidar controversias constitucionales para resolver un caso cuando existen otros fundamentos para resolverlo. *E.L.A. v. Aguayo*, 80 D.P.R. 552 (1958).

En *Domínguez Maldonado v. E.L.A.,* 137 D.P.R. 954, 964, n. 4 (1995), el Tribunal Supremo resumió distintas situaciones donde procede este tipo de autolimitación judicial. Específicamente se expuso que en esta jurisdicción los planteamientos constitucionales no pueden abordarse cuando un caso puede resolverse: (1) mediante un análisis estatutario válido; (2) en armonía con los criterios de las partes y en consonancia con los mejores fines de la justicia; (3) al existir una interpretación razonable de la legislación que permita soslayar la cuestión constitucional presentada; y (4) cuando la controversia puede quedar resuelta definitivamente por otros fundamentos. *Calderón, Rosa-Silva & Vargas v. García*, 120 D.P.R. 803, 811-812 (1988); *Molina v. C.R.U.V.,* 114 D.P.R. 295 (1983); *P.P.D. v. Admor. Gen. de Elecciones*, 111 D.P.R. 199, 243 (1981); *Galarza Soto v. E.L. A.,* 109 D.P.R. 179, 180, n. 7 (1979); *Pacheco v. Srio. de Instrucción Pública*, 108 D.P.R. 592, 601 (1979); *Vives*

*Vázquez v. Tribunal Superior*, 101 D.P.R. 137, 150 (1973); *Mari Bras v. Alcaide*, 100 D.P.R. 506, 513 (1972).

Estos recursos consolidados pueden resolverse adecuadamente mediante la revisión de los señalamientos de error relacionados con el incumplimiento por parte del Tribunal de Primera Instancia, de las reglas procesales que gobiernan el recurso extraordinario de *injunction*. Por esa razón, no entraremos a dilucidar el planteamiento constitucional de libertad de prensa presentado por los peticionarios Telemundo y Pedro Zervigón.

## III

Los peticionarios Telemundo y Pedro Zervigón aducen que la orden recurrida no es otra cosa que una orden de *injunction* dictada sin cumplir con los requisitos procesales aplicables. Por otro lado, el Departamento de la Familia, representado por el Procurador General, admite en su moción en cumplimiento de orden que en este caso no se cumplieron dichos requisitos, pero que aún así debe sostenerse la orden dictada. Esa posición nos desconcierta.

*"El injunction es un mandamiento judicial expedido por escrito, bajo el sello de un tribunal, por el que se requiere a una persona para que se abstenga de hacer, o de permitir que se haga por otras bajo su intervención, determinada cosa que infrinja o perjudique el derecho de otra"*. Artículo 675 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 3521.

La Regla 57 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 57, establece tres modalidades de *injunction*, a saber, el *injunction* permanente, el *injunction* preliminar (Regla 57.1), y el entredicho provisional (Regla 57.2).

El *injunction* preliminar se emite antes del juicio en su fondo y comúnmente se solicita junto con la radicación del pleito en casos de urgencia. Esto requiere del tribunal un pronto señalamiento de vista para discutir los méritos de la moción. Rivé Rivera, *supra*, a la pág. 21.

El propósito fundamental del *injunction* preliminar es mantener el *status quo* hasta que se celebre el juicio en sus méritos. *Mun. de Ponce v. Gobernador*, 136 D.P.R. 776, 784 (1994). De esa forma, la orden de *injunction* preliminar evita que la conducta del demandado produzca una situación que convierta en académica la sentencia que finalmente se dicte o que se le ocasionen daños de mayor consideración al peticionario mientras perdura el litigio. *Cobos Licia v. DeJean Packing Co., Inc.*, 124 D.P.R. 896 (1989).

Los factores que deberá analizar un tribunal al momento de dictar un *injunction* preliminar, sin constituir una limitación, son los siguientes: (1) si existe o no un remedio adecuado en ley; (2) la naturaleza de los daños a causársele a la parte contra la cual se solicita el recurso; (3) la naturaleza del daño que pueda sufrir el peticionario de denegarse el recurso; (4) si tales daños son irreparables o no; (5) si existe la probabilidad de que la causa se torne académica de no concederse el *injunction*, y (6) el impacto sobre el interés público de conceder o denegar el recurso. *Mun. de Ponce v. Gobernador, supra,* a la pág. 776; *García v. World Wide Entmt. Co.,* 132 D.P.R. 378, 390-392 (1992).

En la Regla 57.2, *supra*, se dispone el procedimiento para la expedición de un auto de entredicho provisional. Dicho auto puede ser expedido sin notificación previa al demandado y sin que éste haya tenido oportunidad de ser oído, cuando de la petición bajo juramento surge causa justificada para ello. Este procedimiento afecta el derecho a un debido proceso de ley de la persona contra la cual se emite, por lo que sus requisitos son de estricto y riguroso cumplimiento. *E.L.A. v. Asoc. de Auditores*, Opinión de 11 de marzo de 1999, **99 J.T.S. 25**.

En su vertiente procesal, la cláusula constitucional del Debido Proceso de Ley le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y de propiedad del individuo se haga a través de un procedimiento que en esencia sea justo y equitativo. *Partido Acción Civil v. E.L.A.,* Opinión de 25

de febrero de 2000, **2000 J.T.S. 33**. Para que entre en vigor la protección que ofrece este derecho, tiene que estar en juego un interés individual de libertad o propiedad. Una vez cumplida esta exigencia, hay que determinar cuál es el procedimiento exigido (*What process is due.*). *Rivera Santiago v. Srio. de Hacienda*, 119 D.P.R. 265, 274 (1987).

La Regla 57.2 permite que se dicte una orden de entredicho sin notificación previa a la parte adversa o a su abogado, únicamente si:

"*1. Aparece claramente de los hechos expuestos en una declaración jurada, o en la demanda jurada, que se causarán perjuicios, pérdidas o daños inmediatos e irreparables al solicitante antes de que se pueda notificar y oír a la parte adversa, o a su abogado, y además,*

*2. El abogado del solicitante, o el solicitante mismo, certifica por escrito al tribunal las diligencias que hayan hecho, si alguna, para notificar a la parte contraria o a su abogado, y las razones en que funda su solicitud para que no se requiera dicha notificación. David Rivé Rivera, supra, a la pág. 43.*"

Al emitir un entredicho provisional, los tribunales deben ser extremadamente cuidadosos, sobrios y ponderar los intereses de todas las partes. Al concluir su análisis, deben estar completamente convencidos que de esperar a la celebración de una vista de *injunction* preliminar, el remedio a concederse se tornaría académico. *Ibid.*

Una orden de entredicho provisional es de duración limitada. No podrá exceder de diez (10) días a no ser que sea prorrogada por un período de tiempo igual. Si la orden no especifica el término de duración, vence a los diez (10) días. Véase, *Arrarás v. Tribunal Superior*, 100 D.P.R. 379, 382, n. 1 (1972).

Debido a la limitada duración de una orden de entredicho provisional, la Regla 57.2, *supra*, exige que ésta lleve constancia de la fecha y la hora de su expedición. Ello obedece a que dentro del período de diez (10) días, el tribunal puede celebrar la vista de *injunction* preliminar, la cual sí requiere notificación previa y vista, y en la cual las partes pueden aportar prueba para sostener sus respectivas posiciones. Dr. José A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, **Publicaciones J.T.S.**, 2000, Tomo II, a la pág. 1060.

Otro de los requisitos con los que debe cumplir la orden de entredicho provisional, es que debe especificar el perjuicio que se intenta prevenir y la razón por la cual éste sería de carácter irreparable. Además, deberá expresar la razón por la cual se expidió sin brindar el beneficio de una notificación previa. *Id.,* a la pág. 1061.

Ya emitida la orden de entredicho provisional sin notificación previa, deberá celebrarse la vista de interdicto preliminar en la fecha más próxima posible. Incluso, se ha dicho que una orden de entredicho provisional expedida por tiempo indeterminado equivale a un interdicto preliminar la cual no puede ser expedida sin notificación previa a la parte adversa. *Id.,* a la pág. 1060. Véase, *Arrarás v. Tribunal Superior, supra.*

Además, la Regla 57.3 de Procedimiento Civil, *supra*, establece como requisito la prestación de una fianza antes de la expedición de un *injunction* preliminar o provisional. Sin embargo, la fianza no es requerida al Estado, sus agencias o instrumentalidades, ni a ninguno de sus funcionarios en su carácter oficial.

Tomando en consideración que el *injunction* es un pleito incidental a la acción principal, entonces el *injunction* "*no es nada más que un remedio provisional o permanente, para hacer efectivo el derecho sustantivo que se ejercita en la demanda*". Rivé Rivera, *supra*, a la pág. 45. Dicho lo anterior, entonces procede que definamos el último tipo de *injunction* existente, es decir, el permanente. Este se define como el remedio concedido en la sentencia que ordena a una parte hacer o dejar de hacer algo cuando no existe un remedio eficaz

y rápido para proteger los derechos del reclamante. *Id.,* a la pág. 46, n. 59. En otras palabras, la concesión de un *injunction* permanente puede ser el remedio final que se brinde en un pleito.

## IV

Al analizar la orden recurrida, se desprende claramente que ésta constituye una orden de *injunction* dictada *ex parte* y en la cual se requirió a los aquí peticionarios Telemundo y Pedro Zervigón, que se abstuvieran de transmitir por la televisión una entrevista realizada por Zervigón a la menor Y.L.P.R., también conocida como *"Cristal"*.

Si visualizamos la orden como una de entredicho provisional, advertimos que la misma no cumple ni con los más mínimos requisitos establecidos por las reglas procesales y la jurisprudencia. No se desprende siquiera la hora en que fue dictada dicha orden ni especifica el supuesto perjuicio que se intenta prevenir y la razón por la cual éste sería de carácter irreparable. Tampoco surge de la orden recurrida las razones que movieron al tribunal a dictarla sin la debida notificación a los aquí peticionarios Telemundo y Pedro Zervigón. Más aún, no se convoca a una vista para dilucidar el asunto con la participación de aquéllos contra quienes recayó el entredicho provisional.

Como expusimos anteriormente, ya que este tipo de remedio tiene el efecto de violentar el debido proceso de ley de la parte contra quien se dicta, debe concederse sólo en aquellos casos en los cuales se cumple rigurosamente con los requisitos dispuestos. No es un remedio que puede dictarse libre y con poca o ninguna reflexión, ya que atenta contra uno de los postulados más importantes reconocidos constitucionalmente: el debido proceso de ley. Como expusiera el Tribunal Supremo, el *injunction* o interdicto no debe dictarse con *"automatismo judicial"*, ya que dicho recurso extraordinario está sujeto al balance de los intereses de todas las partes envueltas. Véase sobre el particular, *Misión Industrial v. J.P. y A.A.A.,* 142 D.P.R. 656 (1997):

Por otro lado, aun si consideráramos la orden recurrida como un *injunction* preliminar (ya que se ha dicho que una orden de entredicho provisional expedida por tiempo indeterminado equivale a un interdicto preliminar), notamos que la orden tampoco cumple con los requisitos básicos de ese remedio. El *injunction* preliminar tiene que dictarse con la previa notificación y participación de la parte contra quien se solicita el remedio, además de que el tribunal debe dictarlo luego de analizar y ponderar los efectos que cada parte podría sufrir como consecuencia de la orden. Es patente, también, el incumplimiento con esos requisitos.

A la luz de lo anterior, la orden recurrida constituye una determinación judicial en la cual se pasaron por alto las mínimas garantías constitucionales al debido proceso de ley y la reglamentación procesal aplicable. Por lo tanto, la orden recurrida es inválida y carece de todo efecto legal. Mantener en vigor esa orden, tal y como lo solicita el Departamento de la Familia, sería un claro e impermisible menosprecio de los estatutos aplicables y del derecho constitucional que asiste a los peticionarios Telemundo y Pedro Zervigón.

## V

Por los fundamentos antes expuestos, se expide el auto de *certiorari* y se deja sin efecto, inmediatamente, la orden dictada el 14 de junio de 2002, por el Tribunal de Primera Instancia, Sala de Fajardo, que prohibió la transmisión y publicación de la entrevista a la menor Y.L.P.R. El Tribunal de Primera Instancia deberá de inmediato, entregar a los peticionarios Telemundo y Pedro Zervigón, por conducto de sus abogados, las cintas de la entrevista a la menor.

Adelántese por teléfono y *fax*, y notifíquese de inmediato por la vía ordinaria.

Lo acordó y ordena el Tribunal, y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

ESCOLIOS 2002 DTA 119

**1.** No surge de nuestro expediente entrevista alguna de la periodista Carmen Jovet.

**2.** Conocemos que la más reciente regla ortográfica de la Real Academia de la Lengua Española dispone que esta palabra lleva acento en la "*i*". No obstante, eso altera la pronunciación de la palabra. Por esa razón, preferimos escribirla sin acento para seguir la pronunciación que se usa en Puerto Rico. En la gramática hay que rechazar el arquetipo de una versión "*oficial*" de la Real Academia que desdeña o proscribe todo uso distinto, pues eso sería cerrar los ojos a la realidad de que el uso termina muchas veces por ser la regla gramatical oficial. Rafael Seco, *Manual de Gramática Española*, 9ª ed., Madrid, 1967, pág. 4.

**3.** El peticionario Pedro Zervigón, a través de una *Moción en cumplimiento de orden y en apoyo a Petición de Certiorari,* expuso que la Sra. Janet Toro, Coordinadora del Programa *"Al grano con Zervigón"*, recibió, al igual que la peticionaria Telemundo, la orden recurrida y su correspondiente mandamiento.