ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| GRANT WENDELL TYNER<br><br>Apelante<br><br>v.<br><br>CORAL FODOR BLANCO<br><br>Apelada | KLAN202400407 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>CIVIL Núm.: SJ2023RF00344<br><br>Sobre: Alimentos; Pago por Tercero; Enriquecimiento Injusto |

Panel integrado por su presidente el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro

**Ronda Del Toro, Juez Ponente**

# SENTENCIA

En San Juan, Puerto Rico, a 27 de agosto de 2024.

Comparece Grant Wendell Tyner (apelante o señor Tyner) quien nos solicita la revisión de la resolución de alimentos emitida por el Tribunal de Primera Instancia, Sala de San Juan, el 24 de enero de 2024. En esta, el foro primario le asignó al señor Tyner pagar la suma de $3,609.88 de pensión alimentaria, incluyendo en esa suma los gastos de educación para los dos hijos menores.

Por los fundamentos que exponemos a continuación, *Confirmamos* la resolución apelada.

## I.

El señor Grand Wendell Tyner presentó una demanda contra la señora Coral Fodor Blanco para solicitar la filiación y custodia de dos menores gemelos nacidos en el año 2013. Luego de decretada la filiación de los menores en mayo de 2023, los días 13 y 15 de diciembre de 2023 la Examinadora de Pensiones

Número Identificador

SEN2024 _____

Alimenticias (EPA) celebró las vistas sobre fijación de pensión alimentaria. Las partes estuvieron representadas por abogados. En el proceso testificó la abuela materna, Sra. Aura Blanco. Aquilatada la prueba, el 17 de enero de 2024, la Examinadora de Pensiones Alimenticias emitió un *Informe de la Examinadora de Pensiones Alimenticias* con las debidas recomendaciones. Este informe fue acogido por el foro primario, por lo que, conviene transcribir las determinaciones de hechos, a saber:

<u>DETERMINACIONES DE HECHOS</u>

1. Las partes son los padres de Fabiola y Lucas, gemelos nacidos el 17 de enero de 2013, quienes residen junto a la madre custodio en San Juan, Puerto Rico.

2. La filiación de los menores se estableció mediante Sentencia del 18 de mayo de 2023, notificada el 19 de mayo de 2023. La solicitud de fijación de pensión alimenticia se presentó el 5 de mayo de 2023.

3. La madre custodio no trabaja. Testificó que se dedica a criar sus hijos y mantener su hogar.

4. La madre custodio no está física ni mentalmente incapacitada para trabajar. Por tanto, se le imputan ingresos a base salario mínimo federal, por 40 horas semanales, en la suma neta de $1,161.00 mensuales.

5. El padre no custodio trabaja en Ellab, Inc. y tiene un ingreso neto de $9,068.76 mensuales.

6. El ingreso combinado de las partes es de $10,229.29 mensuales. El ingreso del padre no custodio es el 88.65% del ingreso combinado de las partes y el ingreso imputado a la madre custodio es el 11.35%.

7. La Sra. Aura Blanco es la madre de la Sra. Fodor Blanco y abuela materna de los menores (en adelante la abuela materna).

8. La madre custodio reside junto a los menores en el apartamento 602 de 1058 Avenida Ashford en San Juan.

9. La madre custodio no reclamó pago de renta o hipoteca. La madre custodio reclamó un pago de

mantenimiento de apartamento de $772.00 mensuales. El pago de mantenimiento lo efectúa la abuela materna.

10.    Durante el interrogatorio directo la madre custodio dijo que el apartamento era de ella, pero en el contrainterrogatorio indicó que la dueña era la abuela materna.

11.    Ambos menores estudian el quinto grado en Saint John's School.  Estudian en esa escuela desde prekínder.

12.    El costo de matrícula es de $2,000.00 anuales para ambos menores y la mensualidad de ambos menores es de $3,172.21.  El pago de educación lo efectúa la abuela materna.

13.    El gasto promedio reclamado por la madre para libros, materiales y zapatos es de $1,300.00 anuales para ambos menores y de $600.00 a $700.00 anuales de uniformes para ambos menores.  El pago de gastos de regreso a la escuela lo efectúa la abuela materna.

14.    El total de los gastos promedio de educación es de $3,497.21 mensuales ($41,966.52 anuales) y los paga la abuela materna.

15.    Fabiola toma clases de actuación.  El costo reclamado es de $50.00 anuales de matrícula y $135.00 de mensualidad.  El pago de las clases de actuación lo efectúa la abuela materna.

16.    Lucas practica el deporte de fútbol.  El costo reclamado es de $1,300.00 anuales ($650.00 semestrales), $250.00 anuales de uniformes, $260.00 anuales de tenis y espinilleras y $35.00 semanales de clínicas.  El pago del deporte de fútbol lo efectúa la abuela materna.

17.    Fabiola practica el deporte de volibol.  El costo reclamado es de $230.00 de fondo anual, $110.00 anuales de matrícula, $15.00 anuales de federación, $230.00 anuales de uniformes, $70.00 de mensualidades y los torneos, dos veces al mes, con un costo de entre $29.00 y $34.00 cada uno.  El pago del deporte de volibol lo efectúa la abuela materna.

18.    Ambos menores modelan.  Las fotos profesionales que hay que tomarles para actualizar el portafolio tienen

un costo de $2,300.00 y las fotos digitales $400.00 anuales. Además, Fabiola viaja por el modelaje a Miami o Atlanta cada dos meses. El costo del pasaje es de aproximadamente $400.00 y la estadía de hotel es de $260.00 a $390.00 por viajes. El pago del modelaje lo efectúa la abuela materna.

19. Los menores asisten a un campamento de verano en el mes de junio. Se reclama un gasto aproximado de $2,500.00 ($1,300.00 para un menor y el segundo, que le aplica un descuento, $1,200.00). En julio, Lucas asiste a clínicas de fútbol 3 a 4 veces a la semana con un costo de $35.00 cada una. El pago de campamento de verano lo efectúa la abuela materna.

20. La madre custodio reclamó un gasto cuido (lo que ella llamó "nanny") de $3,033.33 mensuales ($700.00 semanales). Explicó que la "nanny" es necesaria porque son dos menores con actividades a las mismas horas, los mismos días. El pago del cuido o nanny lo efectúa la abuela materna.

21. La madre custodio reclamó un gasto de tutoría de lunes a jueves, $100.00 diarios. Sería un gasto promedio (prorrateado por el año escolar) de $1,444.44 mensuales. El pago de tutorías lo efectúa la abuela materna.

22. Los menores tienen cubierta de plan médico privado Triple S con un costo de $230.00 mensuales.

23. Existe un gasto de deducibles médicos de $100.00 mensuales. Esta determinación de hecho fue una estipulación de las partes.

24. La madre custodio reclamó un gasto de psicólogo, Dr. Gelpí. Ambos menores asisten, dos veces al mes, y cada visita tiene un costo de $100.00.

25. Del testimonio de la madre custodio y la prueba documental surgió que todos los gastos reclamados los paga la abuela materna y se hacen de su cuenta porque la madre custodio no tiene a más nadie. Testificó que ella (la madre custodio) sabe todo sobre sus hijos, se encarga de todo y le pide a la abuela materna que pague. "Mi mamá es como el banco." y "Mi mamá es la

procesadora de pago, de dinero", fueron sus expresiones.

26. La abuela materna testificó en la vista. Indicó que desde que los menores nacieron ella paga todo porque la madre custodio es madre soltera y no tiene apoyo del padre. Paga los gastos de educación, salud y actividades de los menores. Sabe qué hace dos o tres años el padre paga pensión y ahora $1,200.00. La abuela materna manifestó que seguirá pagando los gastos con la ayuda del padre y que, si él no tuviese la capacidad, ella seguiría pagando la escuela.

27. Hemos preparado una tabla que resume los reclamos de gastos suplementarios hechos por la madre custodio.

| Gasto reclamado | Desglose de partidas | Total mensual |
|---|---|---|
| Mantenimiento | $514.67 mensuales ($772 ÷3 x 2) | $514.67 |
| Educación | Matrícula- $2,000.00 anuales<br>Mensualidad- $3,172.21<br>Uniformes- $650.00 anuales<br>Libros, materiales y zapatos- $1,300 anuales | $3,501.38 |
| Clases actuación Fabiola | Matrícula- $50.00 anuales<br>Mensualidad- $135.00 | $139.17 |
| Fútbol Lucas | Matrícula- $650.00 semestrales<br>Uniformes- $250.00 anuales<br>Tenis y espinilleras- $260.00 anuales<br>Clínicas- $35.00 semanales | $302.50 |
| Volibol Fabiola | Fondo anual- $230.00<br>Matrícula- $110.00 anuales<br>Federación- $15.00 anuales<br>Uniformes- $230.00 anuales<br>Mensualidades- $70.00<br>Torneos $60.00 mensuales | $178.75 |
| Modelaje | Portafolios profesionales- $2,300.00 anuales<br>Portafolios Digitales- $400.00 anuales<br>Viajes de Fabiola $4,350.00 anuales | $587.50 |
| Campamento de verano | $2,500.00 anuales | $208.33 |

| | | |
|---|---|---|
| Cuido (nanny) | $3,033.00 mensuales | $3,033.00 |
| Tutoría | $1,444.44 mensuales | $1,444.44 |
| Plan médico | $230.00 mensuales | $230.00 |
| Psicólogo | $400.00 mensuales | $400.00 |
| Deducibles | $100.00 mensuales | $100.00 |
| Total | | $10,639.74 |

28.    El promedio de los gastos que la madre custodio reclama como suplementarios exceden los $10,600.00 mensuales.

29.    Ninguna de las partes individualmente o en conjunto tienen la capacidad económica para sufragar los gastos suplementarios reclamados para los menores. Los gastos mensuales reclamados exceden el ingreso combinado de ambas partes.

30.    Los menores han incurrido en unos gastos porque, desde que nacieron, la abuela materna ha hecho los pagos.

31.    Los gastos suplementarios reclamados para beneficio de los menores no son razonables a base de la capacidad económica de las partes.

En el informe, la Examinadora expuso el derecho aplicable para la pensión alimentaria y al aplicarla a los hechos recomendó, en síntesis, no considerar el gasto de mantenimiento de vivienda según reclamado, pues el pago lo realiza la abuela materna quien es la dueña de la propiedad.  Los gastos de clases de actuación, fútbol, volibol y modelaje los consideró irrazonables a base de la capacidad económica de las partes, y no son pagados por ninguna de estas.  Además, entendió que la partida de entretenimiento está contemplada en la pensión básica, por lo que, no consideró esos gastos como parte de la pensión suplementaria.  Tampoco accedió al pago del gasto de campamento de verano ni de cuido, por no existir la necesidad de estos, toda vez que la madre custodio no trabaja ni estudia.

En cuanto a los gastos suplementarios de plan médico y de educación, la Examinadora dispuso como sigue:

El plan médico privado de los menores tiene un costo mensual de $230.00. Los menores reciben servicios psicológicos con un costo de $400.00 mensuales para ambos menores. Hay un gasto de deducibles médicos estipulado por las partes en la suma de $100.00 mensuales. El total del gasto de salud para ambos menores es de $730.00 mensuales. Consideramos el gasto por ser una necesidad probada de los menores y por tener ambos padres capacidad económica para asumir su costo.

El gasto reclamado de educación es de $3,501.38 mensuales ($42,016.56 anuales) para ambos menores. Solo la partida de educación equivale al 39% del ingreso neto del padre no custodio. El gasto es irrazonable a base de la capacidad económica de las partes, y no es pagado por ninguna de estas. Sin embargo, entendemos que a base del ingreso combinado de las partes estos tienen la capacidad para proveer una educación privada a sus hijos menores de edad. Por tanto, dejamos inalteradas las partidas de $2,000.00 anuales de matrícula para ambos menores $1,300.00 anuales de libros, materiales y zapatos y de $650.00 anuales de uniformes para ambos menores por ser cantidades razonables de gasto de educación privada. Concedemos una cantidad para el gasto de mensualidad escolar de $700.00 para cada menor. El gasto de educación razonable para ambos menores es de $1,495.83 mensuales ($17,950.00 anuales).

Tras considerar los gastos médicos y de educación, así como lo ingresos de las partes, la Examinadora concluyó así:

Por tanto, mediante la aplicación de las guías, con un ingreso neto disponible para el padre no custodio de $9,068.76 mensuales y de $1,161.00 mensuales para la madre custodio, un gasto de educación de $1,495.83 mensuales y gasto de salud de $730.00 mensuales, la pensión alimenticia total para 2 alimentistas de 10 años se computaría como sigue:

| Pensión básica según tablas | 1,636.57 |
|---|---|
| Proporción gasto de educación | 1,326.13 |
| Proporción gasto de salud | 647.18 |
| Pensión alimenticia total | 3,609.88 |

Consecuentemente, recomendó una pensión alimenticia al padre no custodio de $3,609.88.

Como adelantamos, el 22 de enero de 2024, el TPI aprobó las recomendaciones y le impuso al padre no custodio el pago de $3,609.88 mensuales, con fecha de retroactividad al 5 de mayo de 2023, a través de La Administración para el Sustento de Menores (ASUME).

En desacuerdo, el 6 de febrero de 2024 el señor Tyner presentó una *Reconsideración y Solicitud de Determinaciones de Hechos y Conclusiones de Derecho Adicionales*. Adujo, en síntesis, que quien paga todos los gastos de los menores, incluyendo los gastos escolares y de salud, era la abuela materna. Que otorgar el pago por gastos escolares sería un enriquecimiento injusto para la madre de los menores, pues esta no incurre en ningún gasto, pues los paga un tercero.

El 19 de febrero de 2024, la señora Fodor Blanco presentó su *Oposición a la Solicitud de Reconsideración*. Adujo, en esencia, que pretender que se le exima al padre del pago de la pensión suplementaria sería contrario al mejor bienestar de los menores. Además, que los ingresos del padre reflejan tener capacidad económica para aportar a los gastos de los menores.

Evaluados los escritos, el 25 de marzo de 2024, el foro primario acogió las recomendaciones de la Examinadora y denegó la reconsideración.

Aun inconforme, el 24 de abril de 2024 el señor Tyner presentó el recurso de apelación ante este foro intermedio. En este expresó que incidió el TPI al:

> **Primero**: Al permitir el enriquecimiento injusto en detrimento del apelante al acoger las recomendaciones del informe de la EPA e imponer al padre el pago de una partida que ninguno de los padres pagan y que es pagado por un tercero.
>
> **Segundo**: Que abusó de su discreción y actuó contrario a derecho el TPI al acoger las recomendaciones del informe de la EPA e imponer al

padre el pago de una partida que ninguno de los padres pagan y que es pagado por un tercero y al establecer como único criterio la capacidad de pago del padre e ignorando por completo el criterio de necesidad establecido en ley; por cuanto la determinación de imponer exclusivamente al padre un pago de un gasto no pagado por ninguno de los padres solo era posible concluir que no existía ni existe necesidad alguna pues un tercero voluntariamente paga los gastos de los menores según surge de las determinaciones de hechos efectuadas.

**Tercero**: Que abusó de su discreción y actuó contrario a derecho el TPI al acoger las recomendaciones del informe de la EPA e imponer al padre el pago de una partida que ninguno de los padres pagan y que es pagado por un tercero; por cuanto ignoró el TPI las disposiciones aplicables al pago por tercero siendo la abuela materna una tercera ajena quien voluntariamente y sin autorización del padre se obligó al pago de los gastos de los menores todo en contravención a la doctrina de Flores v. Robledo.

Recibido el recurso, a petición del señor Tyner, el 26 de abril le concedimos treinta (30) días para presentar una reproducción estipulada de la transcripción de la prueba oral, más aprobamos un término adicional para los alegatos en alusión a la prueba oral. El 21 de junio de 2024 el señor Tyner suplió la transcripción de la prueba oral, pero no el alegato suplementario con relación a esa prueba. Por su parte, el 16 de agosto, la señora Fodor Blanco presentó su alegato en oposición.

Examinados los escritos de las partes, los documentos que conforman el apéndice y la transcripción de la prueba oral (TPO). Disponemos.

## II.

### A.

Nuestra jurisdicción reconoce que los menores tienen un derecho fundamental a recibir alimentos que emana de la cláusula constitucional del derecho a la vida consagrado en la Carta de Derechos de la Constitución de Puerto Rico. Díaz Rodríguez v.

García Neris, 208 DPR 706, 717 (2022); De León Ramos v. Navarro Acevedo, 195 DPR 157 (2016). Reiteradamente, se ha expresado que la obligación de todo progenitor de proveer alimentos a sus hijos e hijas está revestida del más alto interés público. James Soto v. Montes James, 2024 TSPR 27, 213 DPR ___, res. 20 de marzo de 2024; Díaz Rodríguez v. García Neris, *supra*, pág. 718.   El interés principal es el bienestar del menor. Díaz Rodríguez v. García Neris, *supra*; Santiago, Maisonet v. Maisonet Correa, 187 DPR 550, 559 (2012).   Así pues, la obligación del sustento de los hijos menores recae en ambos padres. Sin embargo, una vez roto el vínculo matrimonial, se reparte entre los padres el pago de la pensión alimentaria en cantidad proporcionada a su caudal respectivo. Figueroa Robledo v. Rivera Rosa, 149 DPR 565, 572 (1999); López Martínez v. Yordán, 104 DPR 594 (1976).

A tenor con la responsabilidad que acarrea todo progenitor de alimentar a sus descendientes, el Artículo 590 del Código Civil 2020, establece que las madres y los padres, por razón de la patria potestad, tienen, entre otros, el deber de alimentarlo y proveerle lo necesario para su desarrollo y formación integral. 31 LPRA sec. 7242.

Por su parte, el Artículo 653 del Código Civil define alimentos como todo lo indispensable para el sustento, la vivienda, vestimenta, recreación y asistencia médica, según la posición social de la familia, 31 LPRA sec. 7531.   Ese término también comprende la **educación** e instrucción del alimentista, cuando este es menor de edad. Íd.

De forma similar, el Artículo 2 (7) de la Ley Orgánica de la Administración para el Sustento de Menores (Ley de ASUMe), Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, define

alimentos como, "parte integral del derecho fundamental a la vida y a la subsistencia de la persona. Se refiere a todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica según la posición social de la familia. También comprenden la educación e instrucción del alimentista menor de edad." 8 LPRA sec. 501 (7).

Igualmente, el Reglamento 8529, conocido por *Guías Mandatorias para computar las pensiones alimentarias en Puerto Rico,* (Guías Mandatorias), vigente a la fecha en que se dictó la Resolución en este caso, define los alimentos como, "[t]odo lo indispensable para el sustento, habitación, vestido y asistencia médica del o de la alimentista según el ingreso familiar. Los alimentos comprenden también la educación e instrucción del o de la alimentista." Artículo 7 (5) de las Guías Mandatorias.

El Alimentante es, "cualquier persona que por **ley** tenga la obligación de proveer alimentos y cubierta de seguro médico. Para efectos de este Reglamento, se refiere **al padre o a la madre** con la obligación de proveerle alimentos y cubierta de seguro médico a un hijo o una hija menor de edad." Íd, Artículo 7 (3).

Como la obligación de alimentar al menor es **inherente** a la maternidad y la paternidad, esta recae sobre los obligados **desde el momento en que la relación filial queda establecida legalmente**, independientemente de las fuentes de las cuales emana la obligación de alimentar. Díaz Rodríguez v. García Neris, *supra;* Santiago, Maisonet v. Maisonet Correa, *supra*, págs. 560-561. (Énfasis nuestro). Esta obligación es personal de cada uno de los excónyuges por lo que debe ser satisfecha del propio peculio y de forma proporcional a sus recursos y a la necesidad del menor una vez decretado el divorcio. Díaz Rodríguez v. García Neris, *supra*; Pesquera Fuentes v. Colón Molina, 202 DPR 93, 108

(2019). Este esquema conlleva hacer un balance entre los intereses del menor y la capacidad económica de los responsables de costear sus necesidades. Pesquera Fuentes v. Colón Molina, *supra*. La determinación de la cuantía de los alimentos corresponde al prudente arbitrio del juzgador, quien debe velar porque la cuantía que se establezca cumpla con el principio de proporcionalidad. Santiago, Maisonet v. Maisonet Correa, *supra,* pág. 562*.*

En cuanto al pago de la pensión, el Artículo 661 del Código Civil, 31 LPRA sec. 7544, establece que, "[a]mbos progenitores responden solidariamente de los alimentos de sus hijos. Si uno de ellos no cumple su obligación de pago íntegra y oportunamente, el otro puede iniciar la acción de cobro a nombre del alimentista, esté o no bajo su custodia, o a nombre propio, como codeudor solidario. […]"

En cuanto a la pensión alimentaria suplementaria, aquí pertinente, el Artículo 7 (14) de las Guías Mandatorias los define como:

> Gastos que tanto la persona custodia como la persona no custodia deben sufragar para satisfacer las necesidades del o de la alimentista, que no se contemplan en la pensión alimentaria básica. Incluye gastos de educación, vivienda, y gastos de salud no cubiertos por un plan de seguro médico. También incluye los gastos por concepto de cuido del o de la alimentista, cuando la persona custodia se vea obligada a incurrir en los mismos para poder estudiar o ejercer una profesión u oficio.

Para el cómputo de la pensión alimentaria suplementaria atinente a la educación y los gastos de salud, el Artículo 20 (b) y (c) de las Guías Mandatorias, dispone como sigue:

> b) Gastos por concepto de educación, educación vocacional o educación preescolar: Se tomará en consideración la matricula anual, el pago de las mensualidades de la institución educativa privada, el pago por concepto de estudios supervisados y

tutorías, el gasto de transportación escolar, los gastos anuales en los que se incurra para la compra de uniformes, textos escolares o universitarios y efectos escolares, cualquier gasto relacionado con la educación del o de la alimentista y cualquier gasto extracurricular que propenda al desarrollo integral del o de la menor. [...]

El gasto por concepto de educación deberá responder al **criterio de razonabilidad**, por lo que el juzgador o la juzgadora deberá tomar en consideración la situación económica de la persona custodia y la de la persona no custodia, las circunstancias del o de la alimentista y el estilo de vida familiar.

c) <u>Gastos de salud no cubiertos por un plan o seguro médico:</u> Se refiere a cualquier gasto por concepto de salud que redunde en beneficio del o de la alimentista, que no esté cubierto por su seguro médico. [...] (Énfasis nuestro).

Por último, cabe mencionar que las determinaciones de alimentos no constituyen cosa juzgada y están sujetos a revisión cuando existe un cambio sustancial en las circunstancias que originaron el convenio. <u>Díaz Rodríguez v. García Neris</u>, *supra;* <u>Pesquera Fuentes v. Colón Molina</u>, *supra;* Artículo 19 (c) de la Ley de ASUMe.  El cambio sustancial en las circunstancias es "aquel que afecta la capacidad del alimentante para proveer los alimentos o las necesidades de los alimentistas". Íd.; <u>McConnell v. Palau</u>, 161 DPR 734, 747 (2004).

**B.**

En cuanto a la figura del pago por tercero, el Artículo 1120 del Código Civil de 2020, dispone que, "[c]ualquier persona puede hacer el pago, tenga interés en el cumplimiento de la obligación o no, ya sea que lo conozca y lo apruebe el deudor, o ya que lo ignore.  La persona que paga por cuenta de otra puede reclamar del deudor lo que ha pagado, excepto cuando lo ha hecho sin su consentimiento. En este último caso, si el tercero hace el pago de buena fe puede exigir al deudor que le restituya aquello en lo que le ha sido útil el pago". 31 LPRA sec. 9151.  A su vez, el Artículo

1121 de referido código, indica que, "[e]l que paga en nombre del deudor, sin que este tenga conocimiento, no puede compeler al acreedor a subrogarle en sus derechos." 31 LPRA sec. 9152.

En los casos de alimentos, se ha reconocido que, de quedar demostrado ante el tribunal de instancia que el alimentante incumplió con la pensión ordenada por el tribunal, la persona que paga por este tiene disponible una acción de reembolso contra alimentante por los gastos en que incurrió, a costa de su propio peculio, para cubrir los gastos de manutención de sus hijos menores que correspondían al alimentante. Véase Figueroa Robledo v. Rivera Rosa, *supra*, pág. 577. Esta acción de reembolso está disponible, independientemente de si el alimentante conocía o desconocía que el pago se estaba efectuando. Íd.

## C.

Como es sabido, toda sentencia dictada por un tribunal tiene a su favor una presunción de validez y corrección. López García v. López García, 200 DPR 50, 59 (2018); Olmeda Nazario v. Sueiro Jiménez, 123 DPR 294 (1989). Es norma conocida que los tribunales apelativos no intervenimos con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realiza el foro primario, a menos que se demuestre que el juzgador haya incurrido en error manifiesto, pasión, prejuicio o parcialidad. Sucn. Rosado v. Acevedo Marrero, 196 DPR 884, 917 (2016); Dávila Nieves v. Meléndez Marín, 187 DPR 750 (2013). Esto, pues en nuestro ordenamiento judicial le damos deferencia al juzgador de hechos en cuanto a su apreciación de la prueba testifical porque, al ser una tarea llena de elementos subjetivos, es quien está en mejor posición para aquilatarla. Sucn. Rosado v. Acevedo Marrero, *supra.* Es el

Tribunal de Primera Instancia el que tuvo la oportunidad de oír y ver el comportamiento de la testigo. Por ello, cuando la evidencia directa de un testigo le merece entero crédito a este, ello es prueba suficiente de cualquier hecho. Id; SLG Torres-Matundan v. Centro Patología, 193 DPR 920 (2015); Meléndez Vega v. El Vocero de PR, 189 DPR 123 (2013). De esa forma, la intervención con la evaluación de la prueba testifical procedería en casos en los que, luego de un análisis integral de la prueba, nos cause una insatisfacción o intranquilidad de conciencia tal que estremezca nuestro sentido básico de justicia. Sucn. Rosado v. Acevedo Marrero, *supra*, pág. 917-918; Rivera Menéndez v. Action Service, 185 DPR 431, 444 (2012); S.L.G. Rivera Carrasquillo v. A.A.A., 177 DPR 345, 356 (2009); Flores v. Soc. de Gananciales, 146 DPR 45, 49 (1998).

A partir de los hechos, los tribunales de instancia precisan las controversias, elaboran sus conclusiones de derecho y resuelven el caso. Dávila Nieves v. Meléndez Marín, 187 DPR 750, 770 (2013). Como foro apelativo, tenemos la tarea de examinar cómo los tribunales inferiores aplican el derecho a los hechos particulares de cada caso. Dávila Nieves v. Meléndez Marín, 187 DPR 750, 770 (2013).

### III.

El señor Tyner alega que es inexistente el pago que se le impuso de $1,326.13 mensuales por la educación de los menores, pues la madre custodia no paga nada por ese concepto, ya que es la abuela materna quien lo realiza de forma voluntaria. Manifiesta que aplica la doctrina de enriquecimiento injusto, en tanto aumenta el ingreso materno pues la madre custodia no incurre en ese gasto. En esa línea, señala que la madre recibiría dos pagos por el mismo concepto, uno por los gastos escolares que paga la

abuela materna y el otro por $1,326.13 que pagaría el padre. Sostuvo que ninguna de las partes tiene la capacidad económica para satisfacer las necesidades de los menores. Manifestó que la abuela materna incurrió en una declaración unilateral de la voluntad para suplir los gastos de los menores, según lo refleja su testimonio y sus propios actos, al decidir pagar para sus nietos todo lo detallado en el acta de la Examinadora de Pensiones. Evaluamos.

El señor Tyner y la señora Fodor Blanco son los padres de dos menores nacidos en enero de 2013. La filiación del padre se estableció 10 años después mediante sentencia emitida el 18 de mayo de 2023.[1] Entretanto, desde que los niños nacieron la abuela materna sufragaba los gastos de los menores relacionados a la educación, salud, actividades y otros.

Ahora bien, una vez quedó establecida la filiación con el padre, entonces recae en este la obligación principal de sufragar los alimentos.[2] Cuando no existe vínculo entre los progenitores, se reparte entre los padres el pago de la pensión alimentaria en cantidad proporcionada a su caudal respectivo.[3] Por consiguiente, el **derecho** claramente establece que es a ambos progenitores a quienes le corresponde el pago de la pensión.

Independientemente a que la abuela materna manifestó que seguirá pagando los gastos con la ayuda del padre y, que, si él no tuviese capacidad, ella seguiría pagando la escuela[4], no por ello, quedan liberados los progenitores de la obligación alimentaria. En ese sentido, la obligación de alimentar al menor es **inherente** a

---

[1] Apéndice pág. 33, párrafos 1 y 2.
[2] Díaz Rodríguez v. García Neris, *supra*.
[3] Figueroa Robledo v. Rivera Rosa, *supra.*
[4] Apéndice pág. 34, párrafos 25 y 26.

la paternidad y le corresponde al padre cumplir con su parte **proporcional** en los gastos de los menores.

Al existir una obligación legal de suplir el alimento a los hijos reconocidos, descartamos la aplicabilidad de la doctrina de enriquecimiento injusto de la madre.    Sobre esta, el Tribunal Supremo ha reiterado que, es una doctrina en equidad, la cual, "es aplicable para hacer justicia a una parte en ausencia de una obligación contractual o legal de parte de la otra." Domínguez Maldonado v. ELA, 137 DPR 954, 969 (1995); Umpierre v. Torres Díaz, 114 DPR 449, 462 (1983).    Aquí, ambas partes están obligadas legalmente, por razón de la paternidad, a suplir el alimento a los menores.

Aclarada la responsabilidad alimentaria de los progenitores, independiente a los actos voluntarios de la abuela materna, pasamos a evaluar la controversia de los gastos por educación.

Luego de celebrada la vista, la Examinadora de Pensiones rindió un informe y el Tribunal lo aprobó.  De la prueba, quedó establecido que la madre custodia no trabajaba, por lo que, se le imputó un ingreso mínimo de $1,161.00 mensuales.  El ingreso neto del padre se fijó en $9,068.76 mensuales.  Ambos totalizaron $10,229.29 mensuales, equivalentes al 88.65% para el padre y de $11.35% para la madre.  En esa misma proporción es que correspondía el pago de los gastos suplementarios.

En este caso, la madre reclamó los gastos relacionados al mantenimiento de un apartamento de vivienda, los de educación, clases de actuación, futbol, voleibol, modelaje, campamento de verano, cuido (nanny), tutoría, plan médico, psicólogo y deducibles.  Estos gastos ascendieron a $10,639.74 mensuales y la abuela materna era quien los cubría.

Al considerar el salario de ambos padres, que totalizaron a $10,229.29 mensuales, la Examinadora entendió que ninguna de las partes individualmente o en conjunto tenían la capacidad económica para sufragar los gastos suplementarios reclamados para los menores[5].

Acto seguido, la Examinadora revisó aquellos gastos que en realidad procedían. En este ejercicio descartó los gastos de mantenimiento del apartamento donde residen los menores, porque le correspondía a la abuela materna, independientemente a quién viviera la residencia. En cuanto a los gastos de clases de actuación, voleibol, fútbol y modelaje, la Examinadora los descartó, por ser irrazonables, además, por ser parte de la pensión básica. Sobre los gastos de campamento de verano y cuido, los consideró irrazonables e innecesarios, toda vez que la madre no trabajaba. El gasto de tutorías, también lo consideró exagerado e innecesario.

Notamos, entonces que la Examinadora recomendó eliminar aquellos gastos que eran necesarios de acuerdo con las circunstancias de los alimentantes y los menores.

Del informe de la Examinadora, acogido por el TPI, surge que solo se justificaba el gasto de salud y de educación, de forma modificada. En cuanto al gasto de educación, aquí en controversia, se reclamó inicialmente $3,501.38 mensuales. La Examinadora consideró que era irrazonable la partida de educación, según el ingreso combinado de ambas partes y, además, por no ser pagado por ninguno de los padres. En este escenario, lo adecuado era realizar los ajustes en los gastos bajo el criterio de razonabilidad y así ocurrió.

---

[5] Apéndice pág. 35, párrafos 28 y 29.

En este ejercicio, la Examinadora dejó inalterado las partidas de $2,000 para matrícula, $1,300 por libros, materiales y zapatos y $650 de uniformes. En cuanto a la mensualidad, por considerarla irrazonable, la rebajó a $700 para cada menor. Con este ajuste, redujo a $1,495 los gastos de educación. De esta cantidad, le correspondía al padre el pago proporcional de 88.65%, equivalente a 1,326.13.

Esta cuantía, la consideramos razonable y adecuada en consideración al ingreso mensual adjudicado a ambos progenitores, entiéndase $9,068.76 mensuales para el padre y $1,161.00 imputados a la madre custodia.

Por tanto, declinamos eliminar el gasto de educación, según el petitorio del señor Tyner, por el hecho de que las cantidades originalmente reclamadas, eran excesivas, irrazonables o porque la abuela materna era quien las pagaba y no la madre custodia. La Examinadora realizó los ajustes necesarios bajo el criterio de razonabilidad, en consideración a la situación económica de los alimentantes, las circunstancias del alimentista y el estilo de vida familiar, tal como lo provee el Artículo 20 (b) de las Guías Mandatorias.

Si bien reconocemos que la abuela materna, durante años, realizó voluntariamente este pago de educación, de acuerdo con sus capacidades económicas, tal aportación propició que los menores recibieran la instrucción privada que de otro modo no podrían tener. Aun así, reiteramos que la ayuda que brindó la abuela materna fue de beneficio para ambos padres. No obstante, ello no exime a la madre, ni al padre, una vez quedó fijada la filiación, de su obligación de suplir las necesidades de sus hijos. Al padre se le designó una cuantía en alimentos con los gastos de salud y educación en proporción a sus ingresos. Esa pensión es

para beneficio de los menores exclusivamente, no son para la madre ni para la abuela.

Por las razones antes expresadas, se confirma la Resolución de alimentos. El apelante no nos demostró que la decisión emitida fuese irrazonable, arbitraria o contraria a derecho.

Claro está, las determinaciones de alimentos no constituyen cosa juzgada y están sujetos a revisión cuando existe un cambio sustancial en las circunstancias que originaron el convenio.[6]

**IV.**

Por los fundamentos que anteceden, se *confirma* la *Resolución* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Salgado Schwarz disiente con la siguiente expresión: "En primer lugar, es un sinsentido jurídico el imputarle el salario mínimo federal como ingreso a la apelada, ya que todos los pagos que la abuela materna realiza en beneficio de ella y sus nietos debería serle imputado como ingreso para este procedimiento de fijación de pensión alimentaria. La apelada no estudia ni trabaja, y no está incapacitada, así que nada impide que ejerza algún trabajo u oficio.

En segundo lugar, la EPA, y por ende, el TPI al aceptar su recomendación, realiza unos malabares interpretativos sobre cuales gastos son razonables y cuales no. Nótese que si de algo puede este Juez estar seguro, es que los gastos reclamados son en base a unas decisiones sobre los menores de edad que tomaron dos personas, y ninguna de éstas fue el apelante. Aún tomando

---

[6] *Véase* Díaz Rodríguez v. García Neris, *supra*.

en consideración que el apelante demandó para solicitar la filiación de sus gemelos, por lo que no estaba presente para esta toma de decisiones, en el presente si lo está para ejercer la patria potestad sobre ellos junto a la apelada.

Posiblemente los menores continúen en las mismas actividades extracurriculares, posiblemente continúen en la misma escuela, pero esa decisión le corresponde a los padres con patria potestad, no a la abuela adinerada que a su vez decide unilateralmente que esa va a ser la escuela de los menores. Por entender que la decisión tomada no responde a la totalidad de las circunstancias y corrección de las cuantías, respetuosamente, DISIENTO."

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones