Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN DE PUERTO RICO<br><br>Apelada<br><br>v.<br><br>BRÍGIDA E. ALMONTE VALERIO, STILLO HAIR STUDIO, INC. T/C/C STILLO HAIR STUDIO UNISEX<br><br>Apelantes | KLAN202400565 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso número: SJ2019CV01423<br><br>Sobre: Cobro de Dinero - Ordinario |

Panel integrado por su presidente, el juez Bermúdez Torres, el juez Adames Soto y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 5 de septiembre de 2024.

Comparece la parte apelante, Brígida E. Almonte Valerio, Stillo Hair Studio, Inc. t/c/c Stillo Hair Studio Unisex, y nos solicita que revoquemos la *Resolución* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 13 de mayo de 2024. Mediante dicho dictamen, el foro primario declaró Ha Lugar la solicitud de reconsideración promovida por la parte apelada, Autoridad de Carreteras y Transporte de Puerto Rico.

Por los fundamentos que exponemos a continuación, se modifica el dictamen apelado y, así modificado, se confirma.

### I

El 13 de febrero de 2019, la Autoridad de Carreteras y Transportación de Puerto Rico (ACT o apelada) incoó una *Demanda* sobre cobro de dinero en contra de Brígida E. Almonte Valerio (Almonte Valerio), Stillo Hair Studio, Inc. t/c/c Stillo Hair Studio

Número Identificador

SEN2024 _____

Unisex (apelantes).[1] Alegó que, el 14 de mayo de 2012, las partes otorgaron un contrato de *Permiso de Entrada y Ocupación* sobre un inmueble sito en San Juan, propiedad de esta, para que Almonte Valerio operara su salón de belleza. Indicó que establecieron un canon mensual de $430.00, a ser pagado por adelantado dentro de los primeros cinco (5) días de cada mes, y un cargo por demora de un 6% del canon estipulado después de quince (15) días de vencida la obligación de pago. Arguyó que, para el 11 de enero de 2019, la parte apelante adeudaba $25,900.00 por concepto de cánones mensuales no pagados por el uso de la mencionada propiedad, más $1,554.00 de cargo por demora, para un total de $27,454.00. Planteó que, a pesar de todas las gestiones de cobro realizadas, la parte apelante no había pagado lo adeudado. Sostuvo que dicha deuda estaba vencida, líquida y exigible. Según adujo, el contrato suscrito entre las partes establecía que podía dar por terminado el contrato cuando vencieran tres (3) cánones mensuales, razón por la cual lo daba por finalizado. En virtud de lo anterior, solicitó que se ordenara a la parte apelante a pagar lo adeudado, así como cualquier otra suma de dinero por concepto de cánones que se acumulara hasta que se desocupara la propiedad, conforme a lo ordenado en el Caso Núm. SJ2018CV11154 sobre desahucio, más los intereses acumulados del 6%. Asimismo, solicitó el pago de las costas, gastos y honorarios de abogado.

Por su parte, el 13 de marzo de 2019, la parte apelante presentó una *Contestación a Demanda y Reconvención.*[2] En esencia, negó las alegaciones esbozadas en su contra y afirmó que el contrato en cuestión estaba vencido. Arguyó que la ACT incumplió su obligación como arrendadora de asegurar el disfrute de la propiedad, toda vez que, luego de la destrucción del local ocasionado por el paso

[1] Anejo IV del recurso, págs. 15-18.
[2] Anejo V del recurso, págs. 35-36.

del huracán María, la ACT nunca reparó el inmueble. Señaló que había realizado reparaciones a la propiedad y que, en la alternativa, la ACT estaba obligada a devolver o compensar el valor de las mismas. Además, sostuvo que la ACT se había negado a recibir los pagos ofrecidos por esta. Por otro lado, en cuanto a la reconvención, planteó que el local estaba inoperante desde el paso del mencionado fenómeno atmosférico, por lo que se había extinguido la obligación por pérdida de la cosa arrendada. Argumentó que había aportado más de $25,000.00 de su peculio para la reconstrucción del inmueble y, hasta ese momento, no había podido culminar ese proceso. Por ello, solicitó que se declarara No Ha Lugar la acción de epígrafe y se declarara Ha Lugar su reconvención.

En respuesta a la reconvención, el 29 de marzo de 2019, la ACT sometió una moción mediante la cual negó las alegaciones allí vertidas.[3] Indicó que la parte apelante no había desalojado voluntariamente la propiedad en cuestión, aun cuando fue la parte perdidosa en un pleito de desahucio (Caso Núm. SJ2018CV11154), forzando el inicio de un procedimiento de lanzamiento en su contra. Según adujo, después del paso del huracán María, la parte apelante había emitido varios comunicados por escrito en los cuales admitía que quería permanecer en el local, razón por la cual se instó una acción de desahucio en su contra. Afirmó que, mientras la parte apelante permaneciera ocupando el inmueble, la deuda continuaría aumentando hasta que culminara el procedimiento de lanzamiento. Argumentó que la parte apelante no pagaba los cánones de arrendamiento previo al paso del huracán María y después de este, según surgía de la *Certificación de Deuda* y del historial de facturación y pagos anejados a la demanda.

---

[3] Anejo VI del recurso, págs. 37-39.

Así las cosas, el 22 de octubre de 2019, la ACT presentó una solicitud para enmendar la demanda, a los únicos efectos de añadir una causa de acción sobre enriquecimiento injusto.[4] Sobre ello, indicó que existía una clara política pública de proteger el erario. Argumentó que, el hecho de que la parte apelante ocupara la propiedad en controversia durante varios años, sin contrato vigente y sin pagar canon alguno, operó en detrimento de dicha política pública, razón por la cual operaba la doctrina de enriquecimiento injusto.

Pendiente lo anterior, el 21 de enero de 2020, la ACT instó una *Moción Solicitando Sentencia Sumaria Parcial y Desestimación de la Reconvención.*[5] En síntesis, reiteró que la deuda correspondiente al periodo de vigencia del contrato —hasta el mes de mayo de 2015— estaba vencida, líquida y exigible. Adujo que, por ello, no se requería la celebración de una vista en su fondo, ya que no procedía las defensas de pago y/o de incumplimiento de contrato levantadas por la parte apelante. Alegó que, según surgía de la *Certificación de Deuda* y conforme a lo admitido por la parte apelante en su contestación al primer pliego de interrogatorios, esta no emitió pago adicional durante la vigencia del contrato desde su último pago parcial de $330.00 realizado en enero de 2014. Sostuvo que, en dicha contestación al interrogatorio, la parte apelante aceptó que los pagos realizados por esta eran los reflejados en la *Certificación de Deuda* anejada a la demanda. Por tanto, arguyó que procedía el pago de $6,980.00 correspondientes al periodo de enero de 2014 hasta

---

[4] Anejo VII del recurso, págs. 40-46.
[5] Entrada Núm. 34 del Caso Núm. SJ2019CV01423 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC). Junto a su moción, la ACT incluyó los siguientes documentos: (1) copia de la *Sentencia* emitida el 7 de febrero de 2019 en el Caso Núm. SJ2018CV11154; (2) copia de la *Orden Enmendada* sobre el lanzamiento de la parte apelante de la propiedad en cuestión, emitida el 15 de marzo de 2019, en el Caso Núm. SJ2018CV11154; (3) copia del *Primer Pliego de Interrogatorio, Solicitud de Producción de Documentos y Requerimiento de Admisiones*, circulado por la ACT, con fecha del 16 de mayo de 2019; (4) copia de la *Contestación a Interrogatorio* suscrita por la parte apelante el 9 de agosto de 2019; (5) copia de la *Cuenta por Cobrar de Arrendamiento* emitida por la ACT el 21 de enero de 2020.

mayo de 2015, por el tiempo que la parte apelante ocupó y utilizó el local incumpliendo su obligación de satisfacer los cánones de arrendamiento mensuales, según estipulado en el contrato suscrito por las partes. Además, solicitó el pago de $418.80 por concepto del 6% de cargos por demora para dicho periodo, más las costas y honorarios de abogado.

A su vez, la ACT solicitó que se desestimara la reconvención por constituir cosa juzgada. Sobre ese particular, detalló que en el Caso Núm. SJ2019CV11154 sobre desahucio, la parte apelante presentó una reconvención con los mismos planteamientos que la instada en el presente pleito, la cual fue desestimada y cuya determinación advino final y firme.

El 11 de febrero de 2020, la parte apelante se opuso.[6] En esencia, alegó que existían controversias de hechos y derecho sustanciales que no permitían la dilucidación de este pleito por la vía sumaria. Reiteró que la propiedad arrendada quedó inservible por el paso del huracán María y la ACT no reparó ni habilitó el inmueble para su uso. Arguyó que había invertido más de $25,000.00 para la reconstrucción del local, con conocimiento de la ACT, quien aceptó y consintió tácitamente los arreglos, así como las reparaciones, realizadas para habilitar el espacio arrendado para poder utilizarlo para el fin por el que se arrendó. Adujo que era una constructora de buena fe, que tenía derecho sobre lo edificado y que se le reconociera un crédito por su inversión.

En cuanto al planteamiento de que aplicaba la doctrina de cosa juzgada en lo alegado en la reconvención, la parte apelante sostuvo que no existía una perfecta identidad entre las cosas

---

[6] Entrada Núm. 37 del Caso Núm. SJ2019CV01423 en el SUMAC. Posteriormente, la parte apelante anejó a su oposición los siguientes documentos: (1) copia del *Inventario de Gastos*, desde el 5 de septiembre de 2017 hasta el 23 de abril de 2019; (2) copia de múltiples facturas de materiales de construcción, entre otras cosas relacionadas. Véase, Entrada Núm. 41 del Caso Núm. SJ2019CV01423 en el SUMAC.

litigiosas, toda vez que, en el caso de desahucio, el bien protegido era la posesión de la cosa arrendada, mientras que en el presente pleito se reclamaba el cobro de alegados cánones de arrendamiento adeudados. Sobre ello, detalló que, por la naturaleza sumaria de la acción del desahucio, no podía reclamar la indemnización por las reparaciones necesarias que realizó al inmueble arrendado, con el fin de conservarlo y poderlo utilizar para lo que ordinariamente se le destinó.

En atención a la solicitud de enmienda a la demanda pendiente, surge de la *Minuta* de la vista de seguimiento celebrada el 8 de diciembre de 2022, que el Tribunal de Primera Instancia determinó que dicha solicitud se tornó académica.[7] Ello, debido a que el foro primario dio por sometido el petitorio sumario y la oposición a este, los cuales incluyeron argumentos relacionados a los planteamientos esbozados en la demanda enmendada.

Examinadas las posturas de las partes, el 20 de enero de 2023, notificada el 23 del mismo mes y año, el foro *a quo* emitió una *Sentencia Parcial* mediante la cual declaró Ha Lugar la solicitud de sentencia sumaria parcial promovida por la ACT.[8] En consecuencia, ordenó a la parte apelante el pago de $6,980.00 por conceptos de cánones de arrendamiento adeudados, $418.00 por cargos por mora a razón de 6%. El foro sentenciador aclaró que el petitorio sumario era para atender únicamente lo adeudado durante la vigencia del contrato hasta mayo de 2015, mientras que los hechos en controversia propuestos por la parte apelante no correspondían a dicho término. En cuanto a la reconvención, el foro de origen determinó que esta no se formalizó y se daba por no puesta, toda vez que nada solicitó al tribunal. Además, señaló que las partes

---

[7] Entrada Núm. 52 del Caso Núm. SJ2019CV01423 en el SUMAC.
[8] Anejo VIII del recurso, págs. 47-49.

debían continuar el descubrimiento de prueba para las reclamaciones posteriores a la vigencia del contrato.

Luego de varios trámites procesales, el 6 de septiembre de 2023, se celebró el juicio en su fondo.[9] Aquilatada la prueba desfilada ante sí y evaluadas las posturas de las partes, el 26 de marzo de 2024, notificada al día siguiente, el Tribunal de Primera Instancia emitió una *Sentencia* mediante la cual declaró No Ha Lugar la demanda enmendada y determinó que no procedía la doctrina de enriquecimiento injusto.[10] En particular, el foro primario desglosó las siguientes determinaciones de hechos:

1. El 14 de mayo de 2012 Almonte Valerio firmó el Permiso de Entrada y Ocupación, por [un] término de 3 años.
2. Por sus cláusulas y condiciones[,] el Permiso de Entrada y Ocupación es un contrato de arrendamiento.
3. La propiedad objeto del contrato es:
   ---Parcela #15-F --URBANA: Lote f radicada en el Barrio R[í]o Piedras, Urbanización Antonsanti del término municipal de San Juan, Puerto Rico con un área superficial de 799.50 pies cuadrados equivalentes a 75.00 metros cuadrados, en lindes por el norte, con [el] terreno de General Auto Supplies, por el Sur, con el Lote A, por el este, con [la] Calle Brema, la oeste con el Lote c. Según [el] plano de mensura núm. 55-2008 del Departamento de Transportación y Obras Públicas. --
4. El contrato establece que cualquier mejor[a] o estructura realizada por el arrendatario pasará a ser partes *[sic]* de la Autoridad.
5. El canon de arrendamiento contratado fue de $430.00 mensuales. Las partes estipularon que[,] para todo el tiempo de la ocupación[,] se mantendría el mismo canon.
6. El contrato venció en mayo de 2015.
7. Para hacer una mejora en una propiedad alquilada, hay que solicitar permiso al a *[sic]* Autoridad o hacer un contrato de mejoras.
8. Almonte Valerio no solicitó autorización para hacer mejoras en la estructura.
9. Si la propiedad sufre un daño que la inhabilita, las reparaciones para ponerla habitable no se consideran mejoras.
10. El salón de belleza no es el único negocio que Almonte Valerio opera en propiedad de la Autoridad.
11. Por razón de sus varios predios alquilados[,] Almonte Valerio se comunicaba frecuentemente con la Autoridad.

---

[9] Entrada Núm. 71 del Caso Núm. SJ2019CV01423 en el SUMAC.
[10] Anexo IX del recurso, págs. 50-57.

12. Almonte Valerio se comunicó con Doña Lizzie Flores[,] quien acordó extenderle el contrato, aunque luego no pudo formalizarlo.

13. **A raíz del paso del Huracán María, el 20 de septiembre de 2017, el techo del local objeto de este caso se desprendió completamente.**

14. **El local se llenó de escombros[;] las paredes de los lados se cayeron.**

15. Almonte Valerio recibió un préstamo de $168,000.00 de Small Business y utilizó parte del dinero para arreglar el local.

16. Almonte Valerio paga $600.00 por el préstamo recibido.

17. Almonte Valerio fue a la Autoridad a informar que arreglaría el local con el préstamo obtenido.

18. Almonte Valerio contrató al Sr. Heraldo Mercet para realizar los trabajos de rehabilitar la propiedad arrendada.

19. Almonte Valerio tiene los recibos de los materiales que Don Heraldo compró para la construcción.

20. Almonte Valerio invirtió $23,000.00 en habilitar la propiedad dedicada a[l] salón de belleza.

21. **El 22 de mayo de 2019, se diligenció una orden de lanzamiento en el inmueble, y se entregó la propiedad a la Autoridad.**

22. **Luego del Huracán María[,] el salón de belleza no volvió a abrir.**

23. **El Huracán María destruyó todo el equipo del salón de belleza.**

24. Para rehabilitar el local[,] se pusieron vigas de acero, paneles de zinc, se pusieron paredes y se hizo el baño.

25. Al momento en que se realizó el lanzamiento[,] el Sr. José Colón Rivera observó que había techo en el local, había paredes y mercancía adentro, aunque no había personas operando.

26. El Sr. Colón Rivera ha sido empleado de la [A]utoridad por 28 años y una de sus responsabilidades es administrar las propiedades arrendadas.

27. La Autoridad no invirtió dinero en reparar el inmueble luego del Huracán María.

28. **Luego del lanzamiento, la Autoridad pudo hacer uso del local.** (Énfasis nuestro).[11]

El foro *a quo* señaló que la ACT reclamaba las rentas dejadas de percibir desde julio de 2015 hasta el lanzamiento de la parte apelante en mayo de 2019, más los cargos por mora, por el término en que no hubo contrato y en el que permitió que la parte apelante ocupara la propiedad. Indicó que la ACT reclamaba que la parte apelante estaba en el inmueble sin permiso cuando pasó el huracán María. El tribunal aclaró que las estructuras que la parte apelante

---

[11] Anejo IX del recurso, págs. 52-53.

tuvo que construir en el predio no fueron mejoras, sino que fue volver a construir lo que había arrendado, pero que el huracán María destrozó. Especificó que, no obstante, la parte apelante testificó que estaba en negociaciones con la ACT para extender el contrato. Detalló que, si bien las formalidades de la contratación con entidades gubernamentales son estrictas, la ACT permitió que la parte apelante continuara ocupando el local, sin contrato. Mencionó que le mereció credibilidad el hecho de que la ACT estuviera en negociaciones con la parte apelante, ya que esta invirtió en el inmueble pensando que recuperaría su inversión en el negocio de salón de belleza que allí tenía establecido.

El foro sentenciador concluyó que la cuantía que la ACT reclamaba como enriquecimiento injusto se compensaba con los gastos de rehabilitación de la propiedad en los que invirtió la parte apelante. Por lo tanto, resolvió que, compensadas las cuantías, nada se adeudaban las partes. Fundamentó su decisión en que la ACT no ejerció el derecho que tenía a tiempo, ni solicitó el desalojo en el término del contrato. Expuso que, lejos de haber sufrido un daño por ello, la consecuencia fue que tuvo a una inquilina que le rehabilitó la propiedad que había quedado destruida luego del paso del huracán María. Añadió que, determinar que la parte apelante debía cánones de renta, luego de que perdió todo el equipo del negocio, y de que invirtió su dinero en rehabilitar un inmueble que quedó destruido para beneficio de la ACT, era hacer un flaco servicio a la justicia. Por consiguiente, determinó que cualquier cantidad que se hubiera adeudado mientras no hubo contrato, quedó compensada al habilitar la propiedad objeto del contrato entre las partes.

Insatisfecha, el 11 de abril de 2024, la ACT presentó una moción de reconsideración.[12] En esencia, indicó que la parte

---

[12] Anejo X del recurso, págs. 58-73.

apelante permaneció disfrutando del inmueble por espacio de cuarenta y ocho (48) meses (desde junio de 2015 hasta el 22 de mayo de 2019) sin pagar cantidad alguna y sin que mediara un contrato por escrito, vigente y registrado en la Oficina del Contralor de Puerto Rico. Argumentó que ello, según nuestro ordenamiento jurídico, consistió en un enriquecimiento injusto por la parte apelante, toda vez que hubo un correlativo empobrecimiento por la entidad gubernamental al dejar de percibir lo que pudo haber percibido en concepto de renta; existía una conexión entre el enriquecimiento y el empobrecimiento; había falta de causa, pues no existía justificación para que la parte apelante ocupara la propiedad sin efectuar pago de renta alguno; y no existía un precepto legal que impidiera a la entidad gubernamental a reclamar el enriquecimiento injusto. En vista de lo anterior, solicitó la reconsideración de la determinación, que se resolviera que hubo enriquecimiento injusto y que se condenara a la parte apelante al pago de cuarenta y ocho (48) mensualidades adeudadas, para un total de $20,640.00, más intereses legales aplicables, costas y honorarios de abogado.

Examinanda la moción, el 13 de mayo de 2024, el foro de origen emitió y notificó la *Resolución* que nos ocupa, mediante la cual declaró Ha Lugar la solicitud y, en consecuencia, reconsideró la *Sentencia* emitida el 26 de marzo de 2024.[13] En específico, el tribunal de instancia manifestó que:

> Habiendo recibido la prueba y siendo que el enriquecimiento injusto es una figura en equidad, este tribunal entendió justo que se nivelara la deuda de renta por los arreglos realizados, ya que, según la prueba desfilada[,] **la Autoridad de Carreteras pudo volver a alquilar el local <u>luego del lanzamiento de la Sra. Almonte</u>**, cosa que no hubiera podido hacer si la Sra. Almonte no hubiera incurrido en los gastos de reparación. (Énfasis nuestro).[14]

---

[13] Anejo I del recurso, págs. 1-3.
[14] Anejo I del recurso, pág. 2.

No obstante, el foro juzgador resolvió que, en estricto derecho, la ACT tenía razón, pues en la contratación gubernamental siempre debe haber un contrato por escrito, vigente y registrado en la Oficina del Contralor de Puerto Rico para que puedan ocurrir las contraprestaciones, pero en este caso el contrato entre las partes estaba vencido. Añadió que la parte apelante no contaba con autorización para hacer las reparaciones, por más que hayan beneficiado a la ACT, de manera que las hizo a su propio riesgo. Por ello, ordenó a la parte apelante a pagar a la ACT la cantidad de $20,640.00, más las costas y gastos del pleito.

En desacuerdo, el 22 de mayo de 2024, la parte apelante presentó una solicitud de reconsideración,[15] la cual fue declarada No Ha Lugar por el foro primario al día siguiente.[16]

Inconforme, el 7 de junio de 2024, la parte apelante acudió ante esta Curia mediante el recurso de epígrafe y señaló el siguiente error:

> Err[ó] el TPI al aplicar la doctrina de enriquecimiento injusto a la inversa en las circunstancias de este caso y condenar a la demandada al pago de $20,640.00 más el interés legal aplicable, así como las costas y honorarios por la tramitación del presente caso[.]

En cumplimiento con nuestra *Resolución* del 11 de junio de 2024, la parte apelada compareció mediante *Alegato de la Parte Apelada* el 8 de julio del mismo año.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

**A**

En una acción de cobro de dinero, la parte demandante únicamente puede reclamar, por vía judicial, aquellas deudas que sean vencidas, líquidas y exigibles. *RMCA v. Mayol Bianchi,* 208 DPR

---

[15] Anejo II del recurso, págs. 4-12.
[16] Anejo III del recurso, págs. 13-14.

100, 108 (2021). Respecto a ello, el Tribunal Supremo de Puerto Rico expresó que:

> El vocablo "líquida" en relación con una cuenta, en lenguaje corriente significa el saldo "o residuo de cuantía cierta que resulta de la comparación del cargo con la data". Y la voz "exigible" refiriéndose a una obligación, significa que puede demandarse su cumplimiento. *Guadalupe v. Rodríguez*, 70 DPR 958, 966 (1950).

En ese sentido, la deuda es "líquida" cuando la cuantía de dinero debida es "cierta" y "determinada". *Ramos y otros v. Colón y otros*, 153 DPR 534, 546 (2001), citando a M.A. Del Arco Torres y M. Pons González, *Diccionario de Derecho Civil*, Navarra, Ed. Aranzadi, 1984, T. II, pág. 168 y a *Freeman v. Tribunal Superior*, 92 DPR 1, 25 (1965). Por otro lado, la deuda es "exigible" cuando la obligación no está sujeta a una causa de nulidad y puede demandarse su cumplimiento. *Guadalupe v. Rodríguez*, supra. Sobre ese particular, nuestro Tribunal Supremo determinó en *RMCA v. Mayol Bianchi*, supra, págs. 108-109, lo siguiente:

> La deuda es líquida por ser cierta y determinada, y es exigible porque puede demandarse su cumplimiento. Así que, "al alegarse que la cuenta es 'líquida y exigible' se están exponiendo hechos, a saber: que el residuo de la cuantía ha *sido aceptado como correcto por el deudor y que está vencido*". (Citas omitidas).

Por otro lado, la parte que exige el cumplimiento de una obligación es a quien le corresponde probar su existencia. *Admor. F.S.E. v. Almacén Ramón Rosa*, 151 DPR 711, 719 (2000); *H.R. Stationery, Inc. v. E.L.A.*, 119 DPR 129, 134 (1987). Lo anterior es cónsono con la Regla 110 de Evidencia de Puerto Rico de 2009, 32 LPRA Ap. VI, R. 110, pues el peso de la prueba recae sobre la parte que resultaría vencida en caso de no presentarse prueba alguna.

### B

Sabido es que las obligaciones nacen de la ley, los contratos y cuasicontratos, y de los actos y omisiones ilícitos en que intervenga cualquier género de culpa o negligencia. Artículo 1042 del Código

Civil de Puerto Rico de 1930, 31 LPRA sec. 2992.[17] Aquellas obligaciones que nacen de un contrato tienen fuerza de ley entre las partes contratantes y sus causahabientes, y deben cumplirse a tenor de este. Artículo 1044 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 2994. Nuestro ordenamiento jurídico dispone que los contratos existen cuando concurren los requisitos de consentimiento, objeto y causa. Desde ese momento, producen obligaciones que tienen fuerza de ley entre las partes contratantes. Artículos 1044 y 1213 del Código Civil de Puerto Rico de 1930, 31 LPRA secs. 2994 y 3391.

No obstante, debido al gran interés público y la aspiración de promover una sana y recta administración pública, la Asamblea Legislativa de Puerto Rico ha impuesto requisitos y condiciones adicionales a la contratación con los municipios. *ALCO Corp. v. Mun. de Toa Alta,* 183 DPR 530, 536-537 (2011); *Quest Diagnostics v. Mun. San Juan,* 175 DPR 994, 1000 (2009). De esta forma, a los contratos con entidades gubernamentales se les examina su validez de acuerdo con los estatutos especiales, en lugar de acudir a las teorías generales de los contratos. *Íd.*

Para que un contrato con el gobierno tenga fuerza de ley entre las partes, son necesarios los siguientes requisitos: (1) se reduzcan a escrito; (2) se mantenga un registro fiel con mira a establecer su existencia *prima facie*; (3) se remita copia a la Oficina del Contralor como medio de una doble constancia de su otorgamiento, términos y existencia; y (4) que se acredite la certeza del tiempo, esto es, haber sido realizado y otorgado quince (15) días antes. *Jaap Corp. v. Depto. Estado et al.,* 187 DPR 730, 741 (2013); *Ocasio v. Alcalde Mun. de Maunabo,* 121 DPR 37, 53-54 (1988).

---

[17] El derecho aplicable en el caso de autos se remite al Código Civil de Puerto Rico de 1930, 31 LPRA sec. 1 *et seq.* (derogado), toda vez que nos encontramos ante hechos ocurridos con anterioridad a la aprobación y vigencia del Código Civil de Puerto Rico de 2020, Ley Núm. 55-2020, 31 LPRA sec. 5311 *et seq.*

En atención al primer requisito, todo contrato entre una entidad privada y el Estado (Municipio) debe constar por escrito para que tenga efecto vinculante entre las partes. *Jaap Corp. v. Depto. Estado et al.,* supra, pág. 741. Esto, constituye un mecanismo profiláctico tendiente a evitar pagos y reclamaciones fraudulentas e ilegales. *Íd.,* pág. 742; *Colón Colón v. Mun. de Arecibo,* 170 DPR 718 (2007). De esta forma, el Tribunal Supremo de Puerto Rico ha rechazado la contratación retroactiva y determinó que era necesaria la existencia de un contrato escrito antes de prestar los servicios pactados. *Vicar Builders v. ELA et al.,* 192 DPR 256, 266 (2015). Así, pues, el requisito de un contrato escrito es indispensable para que tenga efecto vinculante entre las partes. *Íd.,* pág. 264.

Con relación al requisito de que se remita copia del contrato a la Oficina del Contralor, nuestra Asamblea Legislativa aprobó la Ley Núm. 127-2004, que enmendó la *Ley de Registros de Contratos,* Ley Núm. 18 de 30 de octubre de 1975, 2 LPRA sec. 97 *et seq.* (Ley Núm. 18-1975). Dicha enmienda tuvo el propósito de establecer que, el requisito de remitir y registrar el contrato a la Oficina del Contralor no tiene el efecto de anular el contrato, aunque impide que puedan exigirse las prestaciones hasta tanto el acuerdo se registre y se remita a dicha oficina. En específico, el Artículo 1(d) de la Ley Núm. 18-1975, 2 LPRA sec. 97(d), establece que:

> El incumplimiento con lo dispuesto en esta sección o con la disposición equivalente relacionada a registros de contratos incluidos en la sec. 4366 del Título 21, conocida como "Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico" de por sí no será causa para que un tribunal competente declare la nulidad de cualquier contrato o negocio jurídico legalmente válido. No obstante, ninguna prestación o contraprestación objeto de un contrato podrá exigirse hasta tanto se haya dado cumplimiento a lo dispuesto en esta sección. Bajo ningún concepto se entenderá que esta sección permite el otorgamiento de los contratos de servicios profesionales o consultivos de las agencias y entidades gubernamentales de forma retroactiva. Toda entidad gubernamental pagará únicamente por servicios rendidos, así como las partes contratantes siempre se obligarán al cumplimiento de sus

prestaciones en fecha futura. Toda contratación deberá cumplir con los requisitos establecidos en las secs. 8611 a 8615 del Título 3. Cualquier violación a lo dispuesto en este inciso provocará la nulidad del contrato otorgado.

Por otro lado, la *Ley para Establecer Parámetros Uniformes en los Procesos de Contratación de Servicios Profesionales y Consultivos para las Agencias y Entidades Gubernamentales del ELA*, Ley Núm. 237-2004, según enmendada, 3 LPRA sec. 8611 *et seq.* (Ley Núm. 237-2004), dispone los criterios uniformes en los procesos para la contratación de servicios profesionales que deben seguir las entidades gubernamentales. Conforme a ello, dicho estatuto se promulgó con el propósito de consolidar en una sola ley los requisitos de contratación de servicios profesionales o consultivos que otorgan las entidades gubernamentales por concepto de servicios profesionales o consultivos a individuos y entidades privadas. Exposición de Motivos de la Ley Núm. 237-2004, *supra.*

En armonía con lo anterior, el Artículo 3 de la Ley Núm. 237-2004, 3 LPRA sec. 8613, establece los requisitos y formalidades para llevar a cabo la contratación de servicios profesionales. En particular, el referido precepto requiere que todo contrato gubernamental de servicios profesionales o consultivos tenga vigencia prospectiva; se haga por escrito; establezca la vigencia del contrato; detalle la información sobre la parte contratista y los servicios que prestará; establezca la cuantía máxima a pagarse y la forma de pago. *Rodríguez Ramos et al. v. ELA et al.*, 190 DPR 448, 459 (2014).

Los preceptos legales y la jurisprudencia interpretativa en materia de contratación con el gobierno persiguen fomentar la eficacia, honestidad y corrección en protección a los intereses del pueblo. *Quest Diagnostics v. Mun. San Juan,* supra, pág. 1002. Para obligar fondos públicos, es necesario seguir los procedimientos establecidos en ley. *Íd.* Reiteradamente se ha expresado que "los

entes privados tienen el deber de asegurar el cumplimiento de la ley al contratar con los municipios o se arriesgan a asumir la responsabilidad por sus pérdidas". *Íd.*

Por lo tanto, "[l]os tribunales están llamados a velar por las disposiciones legales dirigidas a proteger desembolsos públicos, ya que protegen el interés público y no el de las partes contratantes". *Quest Diagnostics v. Mun. San Juan,* supra, pág. 1002; *Hatton v. Mun. de Ponce,* 134 DPR 1001 (1994). De igual forma, debemos mirar con cautela las reclamaciones fundadas en acuerdos de contratos, en los cuales las autoridades ejecutantes no han dado cumplimiento a los mandatos en ley. *ALCO Corp. v. Mun. de Toa Alta,* supra, pág. 538. Solo mediante una evaluación rigurosa de los requisitos de contratación con el gobierno, queda satisfecho el sentir legislativo y la conciencia judicial adjudicativa sobre desembolso de fondos públicos. *Íd.*

### C

De otra parte, la doctrina del enriquecimiento injusto constituye un principio general del derecho fundado en la equidad, concebido como corolario del ideal de justicia que permea en todo ordenamiento jurídico. *S.L.G. Sánchez v. S.L.G. Valentín,* 186 DPR 503, 516 (2012); *E.L.A. v. Cole,* 164 DPR 608 (2005); *Ortiz Andújar v. E.L.A.,* 122 DPR 817 (1988). Como norma, la acción por alegado enriquecimiento injusto solo es de aplicación en defecto de ley u obligación que provea para otra causa de acción. *Domínguez Maldonado v. E.L.A.,* 137 DPR 954 (1993). De este modo, el aludido reclamo resulta ser procedente cuando la ley no ha previsto cierta situación mediante la cual se produzca un desplazamiento patrimonial sin razón alguna que lo justifique. *S.L.G. Sánchez v. S.L.G. Valentín,* supra.

La efectiva invocación de la doctrina de enriquecimiento injusto está supeditada a la necesaria concurrencia de los siguientes

factores: (1) existencia de un enriquecimiento; (2) un correlativo empobrecimiento; (3) nexo entre el empobrecimiento y el enriquecimiento; (4) falta de causa que justifique el enriquecimiento; e (5) inexistencia de un precepto legal que excluya la aplicación del enriquecimiento sin causa. *S.L.G. Sánchez v. S.L.G. Valentín*, supra; *Domínguez Maldonado v. E.L.A.,* supra; *Ortiz Andújar v. E.L.A.*, supra.

Ahora bien, el Tribunal Supremo de Puerto Rico ha reiterado que los entes privados tienen el deber de asegurar el cumplimiento de la ley al contratar con los municipios o se arriesgan a asumir la responsabilidad por sus pérdidas. *Quest Diagnostic v. Mun. San Juan*, 175 DPR 994, 1002 (2009); *Colón Colón v. Mun. de Arecibo*, 170 DPR 718 (2007). Cónsono con lo anterior, nuestro más Alto Foro ha determinado reiteradamente la inaplicabilidad de cualquier remedio en equidad, como lo es la doctrina de enriquecimiento injusto, en reclamaciones por los daños sufridos por un ente privado en las instancias en las cuales no se adhieren a la normativa establecida, en el caso de autos los requisitos de la contratación gubernamental. *Íd.*; *Las Marías v. Municipio San Juan*, 159 DPR 868 (2003).

A tenor con ello, nuestro Tribunal Supremo se expresó en *Mun. Quebradillas v. Corp. Salud Lares*, 180 DPR 1003 (2011), sobre la aplicabilidad de la doctrina de enriquecimiento injusto en los pleitos en los cuales un municipio es parte. En particular, el más Alto Foro resolvió lo siguiente:

> En el pasado no hemos permitido que personas privadas invoquen remedios en equidad frente a los municipios con los que contratan, porque "es doctrina reiterada que dichos remedios no se aplicarán cuando resulte[n] contrario[s] a una clara política pública plasmada en un estatuto o en la Constitución". Del mismo modo, como excepción, sí le daremos paso a los remedios en equidad cuando no permitirlos resulte igualmente contrario a una política pública estatuida en una ley o en la Constitución.

Precisamente[,] en el caso particular ante nuestra consideración se configura la excepción a la regla general de no permitir los remedios en equidad. No permitir la acción de enriquecimiento injusto sería contrario a la política pública de sana administración de los fondos públicos estatuida en la Ley de Municipios [Autónomos] de 1991.

No hemos permitido que personas privadas invoquen remedios en equidad para recuperar sus inversiones porque eso violaría el objetivo que se persigue con los requisitos formales de contratación que impone la Ley de Municipios Autónomos de 1991. Es decir, avalarlo iría contra el "gran interés del Estado en promover una sana y recta administración pública, [que prevenga] el despilfarro, la corrupción y el amiguismo en la contratación gubernamental". De igual modo, no aplicar esta figura cuando quien reclama es un municipio, estaría opuesta a una sana administración pública, al dejar en manos privadas los fondos p[ú]blicos que le fueron desembolsados contra la ley. "[S]u efecto sería violentar principios de suma importancia encarnados en la Constitución y las leyes del país". *Mun. Quebradillas v. Corp. Salud Lares*, supra, págs. 1020-1021. (Citas omitidas).

A la luz de la normativa antes expuesta, procedemos a disponer de la controversia ante nuestra consideración.

**III**

La parte apelante plantea como único señalamiento de error que el Tribunal de Primera Instancia incidió al aplicar la doctrina de enriquecimiento injusto a la inversa en las circunstancias de este caso. A su vez, arguye que el foro primario erró al condenarla al pago de $20,640.00, más el interés legal aplicable, costas y honorarios de abogado.

Según esbozado, si bien no es permitido que la doctrina de enriquecimiento injusto sea invocada por las personas privadas frente a las entidades gubernamentales con los que contratan, en caso de que medie dicho remedio en equidad, el Estado puede reclamar lo dejado de percibir, aun cuando no exista un contrato vigente entre las partes. En el caso de autos, no hay controversia en que la parte apelante ocupó la propiedad en cuestión después de vencido el contrato de arrendamiento con la ACT en mayo de 2015, hasta su lanzamiento el 22 de mayo de 2019. En virtud de ello, el

foro primario aplicó la doctrina de enriquecimiento injusto levantada por la ACT y ordenó a la parte apelante el pago de lo adeudado entre junio de 2015 hasta mayo de 2019, por concepto de cánones de arrendamiento adeudados, más cargos por mora.

Ahora bien, sabido es que **la doctrina de enriquecimiento injusto no opera automáticamente**, pues para que proceda la aplicación de este remedio en equidad es necesario que **concurran** los requisitos siguientes: (1) **existencia de un enriquecimiento**; (2) **un correlativo empobrecimiento**; (3) una conexión entre dicho empobrecimiento y enriquecimiento; (4) falta de una causa que justifique el enriquecimiento; (5) inexistencia de un precepto legal que excluya la aplicación del enriquecimiento sin causa.

En el presente caso, surge claramente de las determinaciones de hecho esbozadas por el foro apelado —las cuales merecen nuestra deferencia—, que: (1) por el paso del huracán María en septiembre de 2017, el techo de la propiedad en cuestión se desprendió completamente, las paredes de los lados se cayeron, el local se llenó de escombros y se destruyó todo el equipo del salón de belleza; (2) luego del paso del huracán María, el salón de belleza no volvió a abrir; (3) en mayo de 2019 se diligenció una orden de lanzamiento en el inmueble, en contra de la parte apelante, y se entregó la propiedad a la ACT; (4) después del lanzamiento, la ACT pudo hacer uso del local.

Luego de un análisis de lo anterior, así como de una revisión sosegada del expediente ante nos, colegimos que la ACT no probó que, después del paso del huracán María el 20 de septiembre de 2017, hasta el lanzamiento de la parte apelante en mayo de 2019, existió un enriquecimiento por parte de la apelante, ni que tuvo un correlativo empobrecimiento. No albergamos duda de que, según las determinaciones de hecho antes desglosadas, durante dicho término, la propiedad en controversia estaba inservible y ninguna

de las partes pudo hacer uso de ella, mucho menos enriquecerse. Incluso, de las mencionadas determinaciones se desprende expresamente que la ACT no pudo hacer uso del inmueble en cuestión hasta el lanzamiento de la parte apelante, en mayo de 2019. Por lo tanto, **no procede el pago de los cánones de arrendamiento adeudados desde octubre de 2017 hasta mayo de 2019**, mientras no hubo un contrato vigente entre las partes, toda vez que no concurrieron los requisitos exigidos por nuestro ordenamiento jurídico para que opere el referido remedio en equidad.

Examinado con detenimiento el recurso ante nos, así como la prueba documental que obra en autos, a nuestro juicio, el foro primario solamente incidió en aplicar la doctrina de enriquecimiento injusto durante el término de octubre de 2017 hasta mayo de 2019, mientras la propiedad en cuestión no se encontraba apta para su uso, debido a los daños ocasionados por el paso del huracán María. En consecuencia, modificamos el dictamen apelado a los únicos efectos de aclarar que **la parte apelante solamente tiene que pagar a la ACT los cánones de arrendamiento adeudados de $430.00 mensuales, desde junio de 2015 hasta septiembre de 2017, más los cargos por mora a razón de un 6%**. Así modificada y al evaluar concienzuda y ponderadamente los eventos procesales al palio de la normativa jurídica antes esbozada, confirmamos la determinación emitida por el Tribunal de Primera Instancia.

**IV**

Por los fundamentos que anteceden, modificamos el dictamen apelado a los únicos efectos de que la parte apelante solamente tiene que pagar a la ACT los cánones de arrendamiento adeudados de $430.00 mensuales, desde junio de 2015 hasta septiembre de 2017, más los cargos por mora a razón de un 6%. Así modificada, confirmamos la *Resolución* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones